IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMES R. RHORABOUGH,                     No. CIV S-05-1541-DFL-CMK-P

    Plaintiff,

  vs.                                                          ORDER

CALIFORNIA DEPARTMENT
OF CORRECTIONS, et al.,

    Defendants.

                                  /

        Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is plaintiff's first amended complaint (Doc. 21), filed on December 7, 2005. Plaintiff's motion for a temporary restraining order (Doc. 12), will not be addressed until the court determines that service of this action is appropriate.

        The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). Moreover,

the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).

## I.  BACKGROUND

Plaintiff names the following as defendants: California Department of Corrections and Rehabilitation ("CDCR"); Tom Carey; Valadez; Rodriguez; Jensen; Butler; Fields; Calderon; N. Grannis; T. Dickenson; S. Cervantes; V.A. Motschenbacher; Martinez; Chavez; Beyer; Magee; Flores; Montana; and Sims. Plaintiff states that defendants Montana and Sims filed "false and misleading" rules violation reports in 2004 which resulted in his being placed on "C-status," which is a lower privilege group. Plaintiff states that a number of inmate witnesses were not allowed to testify at the disciplinary hearing, thereby violating his due process rights. Plaintiff alleges that defendant Carey was informed of this situation but did nothing.

Plaintiff also contends that his Eighth Amendment rights were violated because his need for a mental health assessment was not acknowledged. Again, plaintiff claims that defendant Carey was made aware of this but did nothing.

Next, plaintiff claims that "[s]ignificant interference with religious practice began [in December 2004] and continued at least twice a week until April, [20]05." The gravamen of this claim appears to be that, because plaintiff was on C-status, he was not permitted to participate in religious services. Plaintiff, who is a Christian, states that "other faiths are allowed worship services while on C-status . . . ." Plaintiff asserts that this also amounts to an Equal Protection violation.

/ / /

1 Finally, plaintiff claims that "[t]he CDCR has repeatedly threatened to transfer me
2 to Level IV for retaliation" and that this has exacerbated his mental illness and discouraged
3 religious practice. In particular, plaintiff claims that defendant Beyer has threatened to worsen
4 his living conditions if he files any more inmate grievances. Plaintiff claims that this chilled his
5 First Amendment right to free speech and, based on the reference to inmate grievances, to
6 petition the government for redress.

## II. DISCUSSION

As with the original complaint, the court notes critical problems with plaintiff's amended complaint. First, the amended complaint does not allege an adequate link between most of the named defendants and the alleged constitutional violations. Second, plaintiff fails to state any substantive claim for relief.[1]

### A. **Causal Link**

To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the defendants and the alleged deprivations. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged

---

[1] The amended complaint is also deficient in that it continues to name the CDCR as a defendant despite it's immunity under the Eleventh Amendment. This defendant was dismissed by order issued on March 17, 2006.

3

constitutional deprivation.  See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

The only defendants specifically mentioned in the amended complaint are Montana, Sims, Beyer, and Carey.  None of the other defendants are referenced anywhere in the amended complaint, other than in the caption.  In particular, there are no allegations as to conduct by defendants Valadez, Rodriguez, Jensen, Butler, Fields, Calderon, N. Grannis, T. Dickenson, S. Cervantes, V.A. Motschenbacher, Martinez, Chavez, Magee, and Flores.  Plaintiff will be given an opportunity to cure this defect consistent with the standards outlined in this order.

**B.    Plaintiff's Substantive Claims**

Plaintiff's amended complaint appears to attempt to allege the following: (1) a due process violation based on the disciplinary hearing which resulted in plaintiff's placement on C-status; (2) an Eighth Amendment violation based on disregard for plaintiff's mental health; (3) a free exercise of religion violation based on access to religious services; (4) an equal protection violation based on denial of religious services; and (5) a First Amendment claim based on retaliation.  The court finds that, substantively, the amended complaint fails to state a claim for relief based on any of these theories.

1.    Due Process

The Due Process Clause protects prisoners from being deprived of life, liberty, or property without due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order to state a claim of deprivation of due process, a plaintiff must allege the existence of a liberty or property interest for which the protection is sought.  See Ingraham v. Wright, 430 U.S. 651, 672 (1977); Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972).  Liberty interests can arise both from the Constitution and from state law.  See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Meachum v. Fano, 427 U.S. 215, 224-27 (1976); Smith v. Sumner, 994 F.2d 1401, 1405 (9th Cir. 1993).  In determining whether the Constitution itself protects a liberty interest, the court should consider whether the practice in question ". . . is within the normal limits or range of custody which the

4

conviction has authorized the State to impose." Wolff, 418 U.S. at 557-58; Smith, 994 F.2d at 1405. Applying this standard, the Supreme Court has concluded that the Constitution itself provides no liberty interest in good-time credits, see Wolff, 418 U.S. at 557; in remaining in the general population, see Sandin v. Conner, 515 U.S. 472, 485-86 (1995); in not losing privileges, see Baxter v. Palmigiano, 425 U.S. 308, 323 (1976); in staying at a particular institution, see Meachum, 427 U.S. at 225-27; or in remaining in a prison in a particular state, see Olim v. Wakinekona, 461 U.S. 238, 245-47 (1983).

In determining whether state law confers a liberty interest, the Supreme Court has adopted an approach in which the existence of a liberty interest is determined by focusing on the nature of the deprivation. See Sandin v. Connor, 515 U.S. 472, 481-84 (1995). In doing so, the Court has held that state law creates a liberty interest deserving of protection only where the deprivation in question: (1) restrains the inmate's freedom in a manner not expected from the sentence; and (2) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 483-84.

With respect to prison disciplinary proceedings, due process requires prison officials to provide the inmate with: (1) a written statement at least 24 hours before the disciplinary hearing that includes the charges, a description of the evidence against the inmate, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. See Wolff, 418 U.S. at 563-70. Due process is satisfied where these minimum requirements have been met, see Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), and where there is "some evidence" in the record as a whole which supports the decision of the hearing officer, see Superintendent v. Hill, 472 U.S. 445, 455 (1985). The "some evidence" standard is not particularly stringent and is satisfied where "there is any evidence in the record that could support the conclusion reached." Id. at 455-56. A violation of prison regulations does not give rise to a due process claim as long

as these minimum protections have been provided. See Walker, 14 F.3d at 1419-20. However, where a § 1983 action seeking monetary damages or declaratory relief alleges constitutional violations which would necessarily imply the invalidity of the prisoner's underlying conviction or sentence, such a claim is not cognizable under § 1983 unless the conviction or sentence has first been invalidated on appeal, by habeas petition, or through some similar proceeding. See Edwards v. Balisok, 520 U.S. 641, 646 (1987) (holding that § 1983 claim not cognizable because allegations of procedural defects and a biased hearing officer implied the invalidity of the underlying prison disciplinary sanction); Heck v. Humphrey, 512 U.S. 477, 483-84 (1994) (concluding that § 1983 not cognizable because allegations were akin to malicious prosecution action which includes as an element a finding that the criminal proceeding was concluded in plaintiff's favor).

      Here, plaintiff asserts that "false and misleading" rules violations reports were the basis of a disciplinary finding. Plaintiff also appears to assert that the disciplinary hearing itself was defective because he was not allowed to call inmate witnesses. Based just on these allegations in the amended complaint, the court cannot say whether plaintiff's claim would necessarily imply the invalidity of his disciplinary sanction. To the extent it does, however, such a claim would not be cognizable under § 1983 absent a showing that the underlying sanction had been invalidated.

      Plaintiff will be given an opportunity to clarify this claim. As discussed above, in amending this claim, plaintiff must allege a specific causal link to a named defendant.

      2.    Eighth Amendment

      The treatment a prisoner receives in prison and the conditions under which the prisoner are confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). A prison official violates

the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982). An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060.

In the amended complaint, plaintiff contends that his Eighth Amendment rights were violated because his need for a mental health assessment was not acknowledged. Plaintiff has not, however, alleged that the failure to acknowledge his need for a mental health assessment resulted in the denial of the minimal civilized measure of life's necessities. More specifically, plaintiff does not allege that the defendants' failure resulted in further significant injury or the unnecessary and wanton infliction of pain. Again, plaintiff will be given an opportunity to clarify this claim.

3.    Free Exercise of Religion

"In order to [allege] a free exercise violation, [plaintiff] must [state] the defendants burdened the practice of his religion by preventing him from engaging in conduct mandated by his faith." Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997) (recognizing that the United States Supreme Court's decision in City of Boerne v. P.F. Flores, 521 U.S. 507 (1997), invalidated the Religious Freedom Restoration Act and restored the "reasonableness test" as the applicable standard in free exercise challenges brought by prison inmates).

As with plaintiff's original complaint, the amended complaint does not state a claim based on violation of free exercise of religion. Plaintiff claims that he was not allowed to attend religious services because he was placed on C-status. Plaintiff does not, however, assert that attending religious services is mandated by the Christian faith. Because it is conceivable that plaintiff could cure this defect through amendment, he will be given an opportunity to amend as to this claim. Again, plaintiff must allege a specific causal link to a named defendant.

4.    Equal Protection

Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose. See San Antonio School District v. Rodriguez, 411 U.S. 1 (1972). Prisoners are protected from invidious discrimination based on race. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Racial segregation is unconstitutional within prisons save for the necessities of prison security

and discipline. See Cruz v. Beto, 405 U.S. 319, 321 (1972) (per curiam). Prisoners are also protected from intentional discrimination on the basis of their religion. See Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997). In order to state a § 1983 claim based on a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must allege that defendants acted with intentional discrimination against plaintiff, or against a class of inmates which included plaintiff, and that such conduct did not relate to a legitimate penological purpose. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (holding that equal protection claims may be brought by a "class of one"); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); Federal Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991); Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985).

The apparent basis for this claim is plaintiff's allegation that "other faiths are allowed worship services while on C-status . . . ." The court finds that plaintiff has not clearly alleged the absence of a legitimate penological interest. Plaintiff makes it clear that he was not allowed to attend religious services because he had been placed on C-status. However, given that C-status is a more restrictive assignment based on violating prison rules, this suggests that the legitimate penological interest of prison security and discipline was involved. Plaintiff will be given an opportunity to clarify his allegations.

### 5. Retaliation

In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must allege that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the prisoner must allege a specific link between the alleged retaliation and the exercise of a constitutional right. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989). The prisoner must also

1 allege that his constitutional right was actually chilled by the alleged retaliatory conduct. See
2 Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000). Thus, the prisoner plaintiff must allege the
3 following in order to state a claim for retaliation: (1) prison officials took adverse action against
4 the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct;
5 (3) the adverse action actually chilled the inmate's First Amendment rights; and (4) the adverse
6 action did not serve a legitimate penological purpose. See Rhodes v. Robinson, 408 F.3d 559,
7 568 (9th Cir. 2005).

8 As with the original complaint, plaintiff's amended complaint fails to allege that
9 the adverse action of not being allowed to attend religious services while on C-status did not
10 actually serve a legitimate penological purpose. Like plaintiff's equal protection claim, the
11 allegations in the amended complaint suggest that institutional security and discipline were at
12 stake. Plaintiff will be given an opportunity to clarify this allegation.

### III. CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, plaintiff is entitled to leave to amend prior to dismissal of the entire action. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Thus, following dismissal with leave to amend, all claims alleged in the original complaint which are not alleged in the amended complaint are waived. See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). Therefore, if plaintiff amends the complaint, the court cannot refer to the prior pleading in order to make plaintiff's amended complaint complete. See Local Rule 15-220. An amended complaint must be complete in itself without reference to any prior pleading. See id.

///

///

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). As discussed in more detail above, the amended complaint must allege in specific terms how each named defendant is involved, and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation. See Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Finally, plaintiff is warned that failure to file an amended complaint within the time provided in this order may be grounds for dismissal of this action. See Ferdik, 963 F.2d at 1260-61; see also Local Rule 11-110.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's first amended complaint, filed on December 7, 2005, is dismissed with leave to amend; and

2. Plaintiff shall file a second amended complaint within 30 days of the date of service of this order.

DATED: May 22, 2006.

/s/ Craig M. Kellison
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE